Judge Wood
stated the case, and delivered the opinion of the court:
An original and supplemental bill have been filed, in this case, in which the complainant claims the specific execution of a contract.
It is set out in these pleadings by the complainant, that the respondent, John Beatty, in April, 1815, bought of Perkins, of Connecticut, two thousand six hundred acres of land in the north part of section 1, in the township of Perkins, in the county of Huron, which was conveyed to him by deed, and to secure the payment of the purchase money he executed to said Perkins a mortgage. In the same year Beatty sold a part of the tract called “ the mile square,” in the southwest corner of his purchase to Amherst C. Ransom, gave him a deed, and received a mortgage to secure the consideration. Ransom afterward, in 1815, conveyed by deed the “ mile square ” to Eleazer Lockwood,' who agreed to perform Ransom’s contract with Beatty; and Lockwood, on October 1, 1815, entered into the contract set out in the original bill, by which he agreed to sell to Ebenezer Ransom one hundred acres of the “ mile square ” off the east side, and to execute to him a good and sufficient conveyance by October 1,1819, in consideration of two hundred dollars, for which sum he received the note or bond of the purchaser, to be paid on the execution of the deed.
*The bill further states that Ebenezer Ransom then went into possession of the one hundred acres, and made improvements, and in 1817, sold his interest to the complainant, House, who, with his assignees, have since held the actual possession of the land; that Lockwood, in 1822, sold his interest in this land to Beatty. The consideration which House agreed to pay to Ransom lor his inter *376 est in the land was two hundred dollars, payable on obtaining the title, and Beatty, by the sale from Lockwood in 1822, became entitled to this payment, when the conveyance should be made. Beatty then procured from Judge Lane, the agent of Perkins, a release of his mortgage so far as it covered this one hundred acres. He also obtained a deed from Lockwood, and Beatty and wife joined in another conveyance to House, and tendered the deeds, which House refused to accept, alleging, as a reason, that the land was incumbered. The bill states that House, after he acquired his interest in the land from Ebenezer Ransom, some time in 1817, or 1818, sold the west half to Hubbard, who afterward prosecuted House because he could not make a title, and the complainant was compelled to buy his peace; that in 1818, the complainant sold the east half to Robinson, who went into possession, made valuable improvements, planted an orchard, and erected a barn. That Hubbard, after the compromise with him, abandoned the land, and the complainant then went into the possession and occupied the west half himself until 1829, when he sold to Dickinson for the consideration of two hundred dollars; but knowing there would be difficulty in procuring the title, as he had then ascertained one Asa Nowler and others had a claim on the land, he gave to Dickinson his note for the consideration money paid, and agreed to convey to Dickinson only when he could obtain the title from Beatty:
The bill states further, that Beatty having thus become entitled to the debt from the complainant of two hundred dollars, which he was to pay Ransom, induced Lockwood to convey the land to his brother, Dempster Beatty, and that Dempster, prior to 1832, conveyed the west half to James; and, after the filing of the bill, but before service of the subpena on Dempster, he conveyed the east half to John W. Beatty, both grantees being sons of John Beatty; which sales, respectively, are alleged to be fraudulent, and without consideration, and with full notice of complainant’s equity.
It is further stated that neither Perkins, Lockwood, nor either of the Beattys, could have made a legal title until after *the partition, which was made in 1832'; but that forty-five hundredths of the title was in Nowler et al., prior to that date, who brought their action of ejectment in the Circuit Court of the United States; and John Beatty, long after the conveyance was made to Demp *377 ster, made himself a defendant in the ejectment, and defended for himself and those claiming under him. The plaintiffs succeeded in the ejectment, and recovered their proportion of the land. John Beatty sued out a writ of error, but the judgment was afterward affirmed. In 1830, the plaintiff in the ejectment, whose title had been affirmed by the suit in error, applied for a partition of the land, the whole tract of two thousand six hundred, acres; that Dempster and James joined in partition, and that this one hundred acres was, by an arrangement made with John Beatty, set off to Dempster and James ; that then John, immediately after the partition, brought ejectments in the names of Dempster and James for the portionsallotted to them; the tenants supposed the complainant would defend, and he, believing no attention was necessary until the second term, judgment was rendered by default. The bill avers that John Beatty then compelled Dickinson to purchase the land of him by representing that House, the complainant, under whom Dickinson claimed, had failed in the action, having no title, and' that Dickinson took a conveyance from James and gave him four notes for seventy-five dollars each, and assigned the two hundred dollar note given him by the complainant for the consideration, for the purchase of him, to John W. Beatty; that John W., at the instigation of his father, brought a suit on this two hundred dollars, and that John Beatty caused the other notes to be assigned to one George Donnell, and suits upon them were afterward enjoined ; that all the notes belonged to John Beatty, and that the conveyance of James Beatty to Dickinson was made at the instigation of John, and without consideration.
. The complainant avers that, since the partition, he has, at all times, been willing to receive a conveyance for the land from the Beattys, the brother and sons holding it, in trust, for John Beatty, and asks for the specific execution of this contract.
Lockwood answered the original bill, in'which answer he says the contract between Ransom and the complainant was canceled by an arrangement between him and the complainant, and that he paid to House a pair of steers at forty dollars for relinquishing the contract. The supplemental bill is not answered *by Lock-
wood, but is taken as confessed. John Beatty refers to the answer of Lockwood for the facts it contains in relation to the abandonment of the contract, and of which he personally knows nothing. He relies on the tender of the deeds to House in 1823, and alleges' *378 •that House had no knowledge of any defect in the title at that time. He denies fraud in his conveyances to Dempster, and from him to James and John W., but admits he made the contract with Dockwood, and that the conveyances from him to Dempster and from Dempster to James and John W. wore made at bis request, in consideration of their work and services ; that their purchases were for a good consideration, and without notice of any claim of the complainant. He admits the ejectments, partition in 1832, possession, and improvements.
James Beatty’s answer sets up that the land belonged to him as ■a gift from his father and for services rendered.
Dempster Beatty, in his answer, says that John Beatty caused the deed to be executed to him by Lockwood, and that he gave .John Beatty a deed of lands in another part of the county, calculating to live on the one hundred acres himself, but did not like ■it, and took other lands in full, and gave James Beatty a deed of fifty acres, and afterward sold John W. Beatty the other fifty for a valuable consideration, and has received his pay; he denies all knowledge of the complainant’s claim, or that he held the land by •any understanding, in trust for John Beatty.
John W. Beatty, Dickinson and, Robinson have not answered the bill; as to them, it is taken as confessed. A reapplication has ■been filed by the plaintiff and much testimony taken; a large :portion of it, however, is in answer to leading questions by the party taking it, is objected to, and should be rejected; and a .greater portion still has relation to a marshal’s sale of Beatty’s lands, and is irrelevant to any inquiry before the court. The questions which seem naturally to arise in this case, so far as they can be gathered from the confused mass of papers, many of which are prepared by John Beatty, the principal defendant himself, are ■these :
1. Stateness of the contract, without an attempt by House, the complainant, to enforce it for so many years ?
2. Was this contract abandoned by House, as set up by John Beatty, in his answer?
3. Did John Beatty comply with the oontract, by the tender *of the deeds to House in 1823, and if so, had he the right to -consider the agreement as rescinded ?
4. Was the conveyances to Dempster Beatty, the brother, and *379 by him to James and J. W. for a valuable consideration, and without notice of the complainant’s equity?
As to the first point, the antiquated nature of the claim, it is,, perhaps, a sufficient answer to say to the principal defendant, John Beatty, that before he can claim anything on this ground, he must show that he has performed, or has been ready to perform, all substantial conditions precedent, on his part, and that the complainant has omitted some obligation or duty resting on him; and, then, from the lapse of a reasonable time for performance by the complainant and his omission, a relinquishment of the contract by him, or a rescission of it, might be presumed, but not without this.
2. Was the contract abandoned by House ? If so, there is an end of this case. Lockwood, in his answer to the original bill, to which John Beatty refers, says such was the fact. That ho paid the complainant forty dollars for his interest in the contract he had taken from Ransom, and the complainant relinquished all right under it. Lockwood’s deposition has, however, been taken, and in that he states that he did not intend to swear to any such thing. That his answer was prepared by counsel; that he stated to his attorney he had paid House, the complainant, twenty dollars, which amount House, the complainant, had paid for him in taxes for school purposes on the land; but that he did not state to his attorney, nor was such the fact, that the complainant abandoned or relinquished any rights under this contract; that if such statement was contained in his answer, it was a mistake. Here, then, is the whole evidence on this point. The witness for the complainant and respondents is equally worthy of credit, for he is the same person. There is no preponderance of testimony, and the fact must be determined against him who sets it up.
3. Did John Beatty comply with the contract; in other words, did he make a tender of a sufficient deed ? It will hardly be pretended. The title to forty-five hundredths of this identical land was in Nowler et al. until the partition was made in 1832. In 1823, therefore, the title of Perkins, and Beattys, and Lockwood, who claimed under him, was defective, and the complainant was not bound to receive it. John Beatty says this fact, that the title was defective, was not *known to the complainant when the tender was made. One witness, however, swears that House, the-complainant, informed him of the claim of Nowler et al., and that *380 the witness communicated it to John Beatty, and before Ms tender of the deed was made. Beatty, then, did not, nor could previous to-the partition in 1832, convey such title as the complainant was bound to accept, and as the complainant by the terms of the contract, was not bound to pay till the title was tendered, and as such tender has not yet been made, there has been no laches on his part, which should defeat his right to the execution of the-contract; nor any performance by the defendant, John Beatty, which should discharge him from liability.
4. Was the conveyance to Dempster, James, and John Beatty for a valuable consideration, and without notice of complainant’s equity?
This is most positively averred by John Beatty, Dempster, and James Beatty, in their answers; but such denials have not carried conviction to my mind, that such is the fact. The answers of the three Beattys are too loosely drawn, too general and sweeping in their denials and averments, and too destitute of any tangible point; the facts stated are too much out of the usual and ordinary course in which honest men transact business, to obtrude themselves on tho credence of the chancellor. John Beatty says the conveyance to Dempster was made by Lockwood, at his request, and by Dempster to James, because he was indebted to James for work and services; but when, where, or in what amount, or the nature of these services, are not specified. Dempster Beatty says he bought the land for himself, and gave other lands in exchange, in another part of the county; but when, where, or the quantity, are entirely overlooked. There is no deed with the exhibits, nor any reference to any. James Beatty says he received the deed as a gift from his father, and for services rendered. Who can believe that these conveyances were made with any other than a fraudulent design against this complainant, and because he would not receive a defective title, and pay his money ? If not, why was John Beatty so careful that the title should not pass through him, but from Lockwood directly to D. Beatty, and then to his sons ? There is much testimony, however, in addition to these circumstances, which go to establish the fraudulent intention of all these parties, and it is equally clear that there is no evidence to establish the facts, that Dempster, James, *or John W. Beatty, ever paid any consideration for this land, and the conveyances on that ground are voluntary and fraudulent as to the complainant.
But had not the defendants all notice of the complainant's equity f *381 They all lived i. the same neighborhood, and the frequent conveyances and reconveyances of this property, and assignments of contracts, partition, and ejectments, could hardly have escaped the observation of all; but here was that notorious actual possession of the land for more than fifteen years, by House and his assignees, who were making valuable improvements on the land, and which possession is admitted by some, and must have been known to all the defendants, which was at least, if not notice in fact, sufficient to put the defendants on inquiry, and should be held to be constructive notice to all of the complainant’s claim. We are, on the whole, of the opinion that the complainant is entitled to the specific execution of this contract; and, as it may be uncertain what amount is due by complainant to Beatty, and on payment of which a specific execution will only be decreed, the case is referred to a master to take an account, and the cause continued.